United States District Court
Northern District of California

`

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ANTJUAN C.,<br>Plaintiff,<br>v.<br>BISIGNANO, et al.,<br>Defendants. | Case No. 25-cv-08253-LB<br>**ORDER REMANDING FOR FURTHER PROCEEDINGS.**<br>Re: ECF No. 13, 15 |

## INTRODUCTION

The plaintiff seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act.[1] An earlier application was denied in April 2019. On the current application, the ALJ found the same severe impairments as before (degenerative disc disease, sciatica, a seizure disorder, status post ischemic stroke, affective disorder with psychosis, anxiety disorder, and posttraumatic stress disorder (PTSD)) but concluded that the plaintiff had

[1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents. Citations to the administrative record (AR) are to the record's internal pagination. The plaintiff is identified by first name and last initial. Fed. R. Civ. P. 5.2(c)(2)(B). The parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c). Consents – ECF Nos. 8–9.

not established changed circumstances overcoming the presumption of continuing non-disability, retained a residual-functional capacity (RFC) for light work limited to simple, routine tasks, occasional interaction with supervisors and coworkers, and brief, occasional contact with the public, and could perform jobs that exist in significant numbers in the national economy.[2]

The plaintiff contends that the ALJ (1) did not give clear and convincing reasons for discounting his symptom testimony, (2) improperly evaluated the psychological-opinion evidence, and (3) consequently assessed an RFC unsupported by substantial evidence. He asks the court to remand for an award of benefits or, alternatively, for further proceedings.[3] The matter is fully briefed and submitted for decision without oral argument.[4]

The court reverses and remands for further administrative proceedings. The ALJ did not identify the testimony she discounted or tie legally sufficient reasons to it, relied on characterizations that the cited records contradict, and discounted the psychological opinions on grounds (the plaintiff's limited mental-health treatment and reliance on his self-report) that Ninth Circuit law does not permit. Those errors infect the RFC and the finding of no changed circumstances. Because the record contains unresolved conflicts, the court remands for further proceedings rather than for an award of benefits.

## STATEMENT

### 1. Procedural History

The plaintiff first applied for SSI in February 2017, alleging disability beginning March 1, 2014. An ALJ denied that application on April 2, 2019, and the Appeals Council denied review in February 2020.[5] The plaintiff filed the current application on July 28, 2022, alleging disability beginning November 24, 2016. The claim was denied initially and on reconsideration. A new ALJ held a hearing on August 29, 2024, and issued an unfavorable decision on November 5, 2024; she

---

[2] AR 36–46 (severe impairments at AR 39; RFC at AR 41; step five at AR 45–46).

[3] Pl.'s Br. – ECF No. 13 at 5–23; Reply – ECF No. 19 at 3–12.

[4] Pl.'s Br. – ECF No. 13; Def.'s Br. – ECF No. 15; Reply – ECF No. 19; Civil L.R. 16-5.

[5] AR 36–37, 133–34, 149.

United States District Court
Northern District of California

declined to reopen the prior application.[6] The Appeals Council denied review on July 31, 2025, making the ALJ's decision the Commissioner's final decision, and the plaintiff timely sued.[7]

**2. The Plaintiff's Testimony and the Function Reports**

The plaintiff was 42 years old when he applied, has a limited education (he left high school without graduating and received special-education services), and has no past relevant work; his only recent job was one week as a security guard.[8]

Physically, he testified to constant low-back pain from a herniated lumbar disc 9 (pain "24 hours a day") with sciatica in both legs that requires him to shift positions frequently, and to ongoing "small" seizures that he manages "with ice and time" despite an increased Keppra dose.[9] Mentally, he testified that his depression and paranoia have become worse in recent years; that he is "very paranoid of people, especially large groups"; that he has had anger outbursts with coworkers, family members, and medical providers; that he hears voices (including his mother's) and sees "dark figures" in his peripheral vision; and that nightmares disturb his sleep.[10] Asked at the hearing whether his physical or mental impairments kept him from working, he first identified his back but immediately clarified, "[t]hey're probably side by side to be honest."[11] He testified that homelessness and his difficulty talking to and trusting providers had kept him from consistent mental-health treatment, that psychiatric medications caused intolerable side effects, and that he nearly walked out of the hearing itself.[12]

On a 2023 function report, the plaintiff wrote that his memory was bad, that he could not pay bills or handle a bank account, that he did not prepare meals or do chores (he was homeless, with

---

[6] AR 36–37, 46.

[7] AR 20–22; Compl. – ECF No. 1.

[8] AR 41–42, 45, 58–59.

[9] AR 60, 62, 66–67, 107–10.

[10] AR 69–78, 81–82.

[11] AR 59.

[12] AR 70, 73–76; *see also* AR 492–94, 536, 543, 599.

"nowhere to cook"), that he spent time with others mainly to get "help with personal items" and tasks, and that he got along with authority figures "ok."[13] His godmother's third-party report was corroborating: among other things, the plaintiff could walk a block and a half before needing to rest, could pay attention for only five to ten minutes, and did not finish what he started.[14]

### 3. The Psychological Opinions and Dr. Catlin's Statement

Katherine Wiebe, Ph.D. examined the plaintiff by telephone for three hours in August 2022 at his representative's request, administering a clinical interview, a mental-status examination, and a battery of standardized tests. She observed weeping, agitation, mood lability, guardedness and initial hostility, memory deficits on formal testing, and paranoid and persecutory thinking. She diagnosed PTSD, unspecified affective disorder, unspecified schizophrenia-spectrum and other psychotic disorder, unspecified personality disorder, and unspecified neurocognitive disorder. She assessed moderate-to-marked limitations in understanding, memory, concentration, pace, and attendance, and marked limitations in every social-interaction domain (interacting with the public, getting along and working with others without excessive irritability or suspiciousness, and accepting instructions and criticism from supervisors, among others). She noted that the plaintiff smoked cannabis during a rest break, that he had completed most tasks (including all cognitive testing) before the break, that he had not used cannabis earlier that day, and that his use was likely self-medication.[15]

Natasha Krikorian, Psy.D. performed a consultative psychological evaluation in December 2023. Her mental-status examination was largely normal, and the plaintiff scored 29/30 on the Folstein mini-mental-status examination. She diagnosed unspecified schizophrenia-spectrum and personality disorders and assessed mild impairment in sustaining concentration, attention, and pace, and moderate impairments in maintaining effective social interaction on a consistent basis

[13] AR 410–16 (specifics at AR 412–15).

[14] AR 42, 418–25 (specifics at AR 423).

[15] AR 489–509 (observations at AR 493–94; diagnoses at AR 505; assessed limitations at AR 495–96, 504–05, 508–09; cannabis at AR 494, 505).

and in adapting to the usual stresses and pressures of a competitive work environment.[16]

Jo McClain, Psy.D., a state-agency psychological consultant, reviewed the record in January 2024 and assessed mild limitation in understanding, remembering, or applying information and moderate limitations in interacting with others, in concentration, persistence, and pace, and in adapting or managing oneself.[17]

Laura Catlin, Psy.D. attempted a psychological evaluation by phone in August 2024 but could not complete it: she reported that the plaintiff was "hostile and resistant from the beginning," accused her of not knowing how to do her job, spoke to her in an "extremely hostile tone," and directed a profanity-laced "verbal[] assault" at her.[18] (The ALJ found the physical assessments of consultative examiner Dr. Han and state-agency consultant Dr. Gitlin persuasive; the plaintiff does not substantively challenge those findings.)[19]

**4. The ALJ's Decision**

Applying *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), and Acquiescence Ruling 97-4(9), the ALJ found that the April 2019 decision created a presumption of continuing non-disability and that the plaintiff had not established changed circumstances.[20] At steps one through three, she found no substantial gainful activity, the same severe impairments as in 2019 (and no new medically determinable impairments, rejecting Dr. Wiebe's personality-disorder and neurocognitive-disorder diagnoses as unsupported by the treatment record) and no listing-level impairment.[21] Rating the "paragraph B" criteria, she found mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentration, persistence, or pace; and mild limitation in adapting or managing

[16] AR 598–605 (examination at AR 600–02; opinion at AR 602–04).
[17] AR 44, 179.
[18] AR 918.
[19] AR 42–43; *see* AR 586–96, 180–82.
[20] AR 37, 42, 46.
[21] AR 39–41.

United States District Court
Northern District of California

oneself.[22]

The ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms but that his statements (and his godmother's) about their intensity, persistence, and limiting effects were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[23] Those reasons: minimal back complaints and normal examinations after November 2022, no new spinal imaging, the plaintiff's failure to follow through with physical-therapy and orthopedics referrals, the apparent control of his seizures for two years, the absence of mental-health therapy or documented mental-status abnormalities in the treatment records, and his activities of daily living.[24]

She found all three psychological opinions unpersuasive. Dr. Krikorian's was "inconsistent with the mental status findings at the evaluation and those in the underlying treatment record," inconsistent with the plaintiff's failure to engage in mental-health treatment offered in 2022, and "based on the claimant's self-report rather than any objective measure."[25] Dr. McClain's was inconsistent with Dr. Krikorian's clinical findings and the treatment record.[26] Dr. Wiebe's was inconsistent with the treatment records, "which show no mental status abnormalities or mental health therapy," with Dr. Krikorian's testing and examination, and with the plaintiff's daily activities; the ALJ added that the plaintiff was smoking cannabis during the evaluation and that Dr. Wiebe "did not indicate how this influenced her assessment."[27] And the ALJ found Dr. Catlin's account inconsistent with the treatment record, "which shows no abnormal social behaviors during medical visits," with the consultative examiners' descriptions of the plaintiff as cooperative, and with her own observation of "no hostility from the claimant during the hearing."[28]

---

[22] AR 40–41. The prior ALJ rated the plaintiff's limitations in interacting with others, in concentration, persistence, or pace, and in adapting or managing himself as moderate. AR 40 (citing Ex. B1A/9).

[23] AR 42.

[24] AR 40, 42–43.

[25] AR 43.

[26] AR 44.

[27] *Id.*

[28] *Id.*

The ALJ adopted the 2019 RFC: light work with postural limits and no concentrated exposure to workplace hazards; "simple and routine tasks involving simple, work-related decisions"; the ability to adapt to routine workplace changes; "occasional interaction with supervisors and coworkers"; and "brief, occasional contact with the public."[29] Crediting the vocational expert's testimony, she found at step five that the plaintiff could work as a cleaner, marker, or assembler, and that he was not disabled.[30]

## GOVERNING LAW

### 1. Standard of Review

Under 42 U.S.C. § 405(g), the court's review is limited to whether substantial evidence supports the Commissioner's decision and whether the decision applies the correct legal standards. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (cleaned up). If the evidence supports both the ALJ's conclusion and a different one, the court must defer to the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). But the court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### 2. The Five-Step Sequential Evaluation

The Commissioner determines disability through a five-step sequential evaluation, asking whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listed impairment; (4) can perform past relevant work given his RFC; and (5) can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(i)–(v). The claimant has the burden of proof at steps one through four; at step five, the burden shifts to the Commissioner. *Tackett*, 180 F.3d at 1098.

---

[29] AR 41; *see* AR 37, 46, 139.

[30] AR 45–46, 85–86.

United States District Court
Northern District of California

## ANALYSIS

The plaintiff contends that the ALJ erred by (1) failing to provide clear, convincing, and well-supported reasons for discounting the plaintiff's symptom testimony, (2) failing to properly evaluate the medical opinions of record, and (3) failing to base the plaintiff's mental and physical RFC on substantial evidence.[31] The court remands for further proceedings.

### 1. The ALJ's Evaluation of the Plaintiff's Symptom Testimony

The ALJ did not give legally sufficient reasons for discounting the plaintiff's symptom testimony.

An ALJ evaluates a claimant's symptom testimony in two steps. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Second, if he does and there is no affirmative evidence of malingering, the ALJ may reject his testimony about the severity of his symptoms only by offering "specific, clear and convincing reasons" for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (cleaned up), *superseded by regulation on other grounds as stated in Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020). The ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Boilerplate and general findings are not enough. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). Permissible considerations include inconsistency with the objective medical evidence (though that cannot be the sole ground), daily activities, effective treatment, and an unexplained or inadequately explained failure to seek or follow treatment. *Smartt v. Kijakazi*, 53 F.4th 489, 497–99 (9th Cir. 2022); *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Bunnell v. Sullivan*, 947 F.2d 341, 345–47 (9th Cir. 1991) (en banc); 20 C.F.R. § 416.929(c); SSR 16-3p. Before drawing an adverse inference from limited treatment, the ALJ must consider possible explanations, SSR 16-

[31] Pl.'s Br. – ECF No. 13 at 5–22.

United States District Court
Northern District of California

3p; *Smolen*, 80 F.3d at 1284, and "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (cleaned up).

The first step is satisfied: the ALJ found severe physical and mental impairments that could reasonably be expected to cause some of the alleged symptoms.[32] She made no finding of malingering (and both examining psychologists noted the plaintiff's good effort).[33] The clear-and-convincing standard therefore applies, and the decision does not meet it, for three reasons.

First, the ALJ did not connect her reasons to identified testimony. The only finding addressed to the testimony as a whole is the boilerplate conclusion that the plaintiff's statements are "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[34] That formulation does not say which statements the ALJ discounted or link any reason to any statement, and it precludes meaningful review. *Brown-Hunter*, 806 F.3d at 494; *Treichler*, 775 F.3d at 1103. Nor did the ALJ address material testimony at all. She characterized the plaintiff as testifying "that the primary reason that he is unable to work is a back impairment," but he immediately clarified that his physical and mental impairments are "probably side by side."[35] She never mentioned (much less gave clear and convincing reasons for rejecting) his testimony that his depression and paranoia had worsened, that he fears people and has anger outbursts (including with medical providers), that he experiences auditory and peripheral visual hallucinations, or that homelessness, distrust of providers, and intolerable medication side effects limited his treatment.[36] The omissions matter: the vocational expert testified that being irate with an employer, or missing more than one day of work a month, would preclude employment.[37]

Second, some of the reasons the ALJ did give rest on characterizations that the cited records

[32] AR 39, 42.

[33] AR 494, 599; Reply – ECF No. 19 at 3.

[34] AR 42.

[35] AR 42, 59.

[36] AR 69–78, 81–82.

[37] AR 89.

contradict. She wrote that the plaintiff's February 6, 2023, physical examination "showed no back-related abnormalities," but the cited note did not assess musculoskeletal function; it recorded an "L5 herniated disc x 7 yrs that is causing" low back pain.[38] She found that the plaintiff "regularly socialized with others and had no problems getting along with authority figures," but the function report she cited says that he spent time with others to get "help with personal items" and tasks and that he got along with authority figures "ok."[39] She found that he could "prepare meals" and "perform household chores," but he checked "No" for both; he was homeless, with "nowhere to cook."[40] And she found his seizures "controlled for the past two years" because the treatment record showed no reports after November 2022, without addressing his 2024 testimony that smaller seizures continued despite an increased Keppra dose.[41] An ALJ may not reach a conclusion "by ignoring competent evidence in the record that suggests an opposite result," *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), or by paraphrasing the record inaccurately, *Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998), and the deference owed to rational interpretations of the evidence does not extend to characterizations that the cited records themselves refute.

Third, the treatment-based reasons fail on this record. As to mental health, the record documents the plaintiff's homelessness, his mistrust and avoidance, his reports of intolerable medication side effects, and his frustration that only monthly therapy was offered (he cursed at and hung up on La Clinica providers over precisely that limitation).[42] SSR 16-3p required the ALJ to consider those explanations before drawing an adverse inference from limited treatment, and *Nguyen* forbids inferring from a mentally impaired claimant's failure to pursue treatment that his symptoms are overstated. *Nguyen*, 100 F.3d at 1465; *Smolen*, 80 F.3d at 1284. The ALJ considered none of it. As to the back impairment, the ALJ found degenerative disc disease severe

---

[38] AR 42, 550–51.

[39] AR 40, 414–15.

[40] AR 40, 44, 412.

[41] AR 42, 66–67.

[42] AR 60, 70, 73–76, 492–94, 536, 539–41, 543, 599.

United States District Court
Northern District of California

yet reasoned that the absence of new imaging undercut the plaintiff's pain testimony; prior imaging had already established the degenerative condition, and a lack of corroborating objective evidence cannot by itself justify discounting pain testimony.[43] *Bunnell*, 947 F.2d at 345–47.

Because the ALJ did not tie clear and convincing reasons to identified testimony, the court remands on this ground.

**2. The ALJ's Evaluation of the Psychological Opinions**

The ALJ's evaluation of the psychological opinions is not supported by substantial evidence.

For applications filed on or after March 27, 2017, the ALJ evaluates the persuasiveness of medical opinions under 20 C.F.R. § 416.920c and must articulate how she considered the two most important factors: supportability and consistency. *Woods v. Kijakazi*, 32 F.4th 785, 787, 792 (9th Cir. 2022); 20 C.F.R. § 416.920c(a), (b)(2). The former hierarchy of deference to treating and examining sources is gone, but "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Kitchen*, 82 F.4th at 739. Conclusions are not explanations. *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

Two premises run through the ALJ's rejection of every psychological assessment, and neither survives scrutiny. The first is the absence of mental-health treatment and therapy. For the reasons in Section 1, that reliance was improper: a claimant's failure to seek treatment for a mental disorder — explained here by homelessness, avoidance, medication side effects, and the thin services offered — is not a substantial basis for concluding that a medical professional's assessment of his condition is inaccurate. *Nguyen*, 100 F.3d at 1465. The second is the assertion that the treatment record "show[s] no mental status abnormalities" and "no abnormal social behaviors during medical visits."[44] The record says otherwise. In September and October 2022 (during the period at issue), the plaintiff told a La Clinica therapist that monthly-only

[43] AR 39, 42; *see* AR 607–29 (2016–2017 imaging and diagnoses).

[44] AR 44.

United States District Court
Northern District of California

appointments were "wasting people's time" and hung up on her; hung up on a case manager a week later; and cursed at and hung up on another therapist.[45] A neurology consultation had earlier been terminated for his "verbally abusive behavior."[46] Both Dr. Wiebe and Dr. Catlin documented hostility firsthand.[47] The ALJ mentioned none of this. Rejecting opinions as inconsistent with a record that in fact corroborates them is not an explanation supported by substantial evidence. *Kitchen*, 82 F.4th at 739; *Gallant*, 753 F.2d at 1456.

The source-specific reasons fare no better.

**Dr. Wiebe**. The daily-activities rationale rests on the mischaracterizations discussed above, and the cannabis rationale (that Dr. Wiebe "did not indicate how" the plaintiff's cannabis use "influenced her assessment") ignores that she did: she reported that the plaintiff completed most tasks, including all cognitive testing, before the rest break in which he smoked, that he had not used cannabis earlier that day, and that his use was likely self-medication.[48] An ALJ may not disregard a source's actual explanation and then fault the source for not providing one. *Gallant*, 753 F.2d at 1456; *see Orn*, 495 F.3d at 630 (the record must be considered as a whole). The ALJ also discounted Dr. Wiebe as inconsistent with Dr. Krikorian's evaluation while simultaneously finding Dr. Krikorian unpersuasive. Dr. Krikorian's actual conclusions (moderate social-interaction and adaptation limitations) are closer to Dr. Wiebe's than to the ALJ's finding of mild limitation.

**Dr. Krikorian**. That her moderate limitations "were based on the claimant's self-report rather than any objective measure" is not a legitimate ground for discounting a psychological opinion. Psychiatric "diagnoses will always depend in part on the patient's self-report," and the "clinical interview and a mental status evaluation" (both of which Dr. Krikorian performed, along with the Folstein test) "are objective measures" and part of the standard diagnostic technique. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (cleaned up). And the assertion that her conclusions were "inconsistent with the mental status findings at the evaluation" is a conclusion, not an

---

[45] AR 539–41.

[46] AR 636; *see also* AR 138, 143.

[47] AR 493–94, 918.

[48] AR 44, 494, 505.

explanation: the ALJ did not say why largely normal cognition-focused findings are inconsistent with moderate limitations in social interaction and adaptation grounded in the plaintiff's diagnoses, history, and presentation. *Embrey*, 849 F.2d at 421–22; *Kitchen*, 82 F.4th at 739.

**Dr. Catlin.** Her account of the terminated evaluation was not a medical opinion requiring a persuasiveness finding, but the ALJ's reasons for setting it aside (no abnormal social behaviors in the treatment record, cooperative behavior with two consultative examiners, and no hostility at the hearing) ignored the corroborating evidence just recounted, and the plaintiff's composure in structured, one-time encounters does not answer the documented pattern elsewhere.[49]

**The net effect.** The ALJ rejected every psychological assessment in the record (two examining psychologists and the agency's own reviewing consultant) and then rated the plaintiff's social-interaction limitation as mild, a level milder than any medical source assessed (moderate to marked) and milder than the 2019 findings she purported to adopt.[50] That left the mental-RFC findings resting on the ALJ's own lay assessment of the clinical evidence rather than on substantial evidence. The court remands for a proper evaluation of the opinions.

### 3. The RFC and the Presumption of Continuing Non-Disability

The remaining findings fall with the first two. The RFC must rest on all the relevant evidence, including the medical opinions and properly evaluated symptom testimony. 20 C.F.R. §§ 416.945(a), 416.946(c); SSR 96-8p; *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Because the ALJ's RFC incorporated her flawed evaluations (and mirrored the 2019 RFC notwithstanding the later evidence) it is not supported by substantial evidence. The court does not reach the plaintiff's further arguments that the specific limitations (simple tasks, occasional interaction) are inadequate on their own terms.

The same is true of the *Chavez* finding. A prior final determination of non-disability creates a presumption of continuing non-disability, which the claimant may rebut by proving "changed

---

[49] AR 44, 494, 539–41, 636, 918.

[50] AR 43–44, 138, 179, 504, 509, 604.

circumstances" (for example, a change in the severity of an impairment or the existence of an impairment not previously considered). *Chavez*, 844 F.2d at 693; *Lester v. Chater*, 81 F.3d 821, 827–28 (9th Cir. 1995); Acquiescence Ruling 97-4(9). The ALJ's finding that the plaintiff "failed to establish changed circumstances" rested entirely on the evaluations held erroneous above: her conclusions that the treatment records showed no worsening, that the plaintiff's contrary testimony was not consistent with the record, and that the psychological opinions (including Dr. Wiebe's new diagnoses of personality disorder and neurocognitive disorder) were unpersuasive.[51] On remand, the ALJ must reassess changed circumstances after properly evaluating the evidence — including the plaintiff's testimony that his depression and paranoia worsened, his 2022 reports of worsening depression to his providers, and Dr. Wiebe's diagnoses of impairments not considered in 2019 — and may not apply the presumption on the basis of the analysis rejected here.[52]

### 4. Remand for Further Proceedings

The plaintiff asks the court to credit the discredited evidence as true and remand for an award of benefits.[53] That remedy is reserved for rare circumstances in which (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled — and even then, the court retains discretion to remand for further proceedings when the record as a whole creates serious doubt about disability. *Garrison*, 759 F.3d at 1019–21; *Treichler*, 775 F.3d at 1099–102.

The first condition is met; the second and third are not. The record contains unresolved conflicts: Dr. Wiebe's marked limitations against Dr. Krikorian's largely normal examination findings and more moderate assessment; documented hostility toward some providers against cooperative presentations with others; and the open question whether the properly evaluated

---

[51] AR 37, 39–45.

[52] AR 69, 77, 81–82, 505, 538.

[53] Pl.'s Br. – ECF No. 13 at 22–23; Reply – ECF No. 19 at 11–12.

United States District Court
Northern District of California

evidence establishes changed circumstances and a more restrictive RFC. Further administrative proceedings would be useful to resolve those conflicts and ambiguities, *Treichler*, 775 F.3d at 1101, 1103–04, so the court remands for further proceedings, not for an award of benefits.

## CONCLUSION

The court reverses the Commissioner's final decision and remands for further administrative proceedings consistent with this order. On remand, the ALJ must reevaluate the plaintiff's symptom testimony, the psychological-opinion evidence, whether the plaintiff has established changed circumstances under *Chavez*, and the plaintiff's residual functional capacity, and must proceed through the sequential evaluation as necessary.

This resolves ECF Nos. 13 and 15.

**IT IS SO ORDERED.**

Dated: September 11, 2026

LAUREL BEELER
United States Magistrate Judge